UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

THE STATE OF LOUISIANA,
By and through its Attorney General, JEFF
LANDRY;

         Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY;

         Defendant.

Civil Action No. _____

**COMPLAINT**

   NOW COMES Plaintiff the State of Louisiana ("Louisiana," "the State," or "Plaintiff") and states as follows:

**INTRODUCTION**

   1. Louisiana brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, challenging the failure of United States Environmental Protection Agency ("EPA") to respond to and fulfill the State's FOIA request for records.

   2. The State submitted a June 29, 2023 FOIA request to EPA seeking 13 categories of records in in EPA's possession ("Request"). *See* Ex. 1 at 1-3.

   3. Even though more than 30 working days have passed since EPA received the State's FOIA request, to date EPA has failed to determine and communicate the scope of the documents it intends to produce and withhold, whether it will comply with the State's entire request, its reasons for withholding documents, and also failed to inform the State of its opportunity and timing for an administrative appeal. EPA has also failed to abide by its own time frame for completing its

production, and failed to arrange an alternative time frame with the State for processing the Request. Indeed, EPA's latest communication no longer even provides an anticipated date of completion for compliance, instead only indicating that EPA "expects to release the next interim production on December 22, 2023." The agency has thus violated FOIA's statutory deadlines.

4. Alternatively, EPA has failed to "promptly" produce all responsive records to the State's request as required by FOIA. 5 U.S.C. § 552(a)(3)(A).

5. The State accordingly brings this suit to compel EPA to (1) provide a determination in response to its FOIA request, (2) promptly disclose all remaining responsive, non-exempt records, including any improperly redacted information, and (3) provide the documents without unlawful redactions that violate FOIA, and to provide a *Vaughn* index[1] explaining its justification for the redactions it has made to facilitate ascertaining which redactions are defensible under FOIA.

## PARTIES

6. Plaintiff State of Louisiana is a sovereign State of the United States of America, and has authority to file suits to vindicate its sovereign, quasi-sovereign, and proprietary interests.

7. Defendant EPA is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is charged with the administration of federal environmental laws, such as the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* EPA has possession, custody, and control of records to which the State seeks access pursuant to FOIA. The State's FOIA request at issue in this suit was addressed and directed to EPA.

## LEGAL STANDARD AND GOVERNING LAW

8. FOIA requires a federal administrative agency to promptly make available requested, non-exempt agency records in response to a request that (a) reasonably describes such records, and

---

[1] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

(b) "is made in accordance with published rules stating the time, place, fees, ... and procedures to be followed[.]" 5 U.S.C. § 552(a)(3)(A).

9. FOIA also requires federal agencies to make a determination and respond to a valid request within 20 working days (i.e., exempting Saturdays, Sundays, and legal public holidays) after receipt of such request, including notifying the requestor immediately of its determination, the reasons therefor, and the right to appeal any portion of the determination that is adverse. 5 U.S.C. § 552(a)(6)(A)(i).

10. A "determination" as required by FOIA is more than just an "initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188-89 (D.C. Cir. 2013). Rather, the agency "must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.*

11. In certain circumstances, a federal agency may provide notice to the requester that "unusual circumstances" merit additional time—up to an additional 10 working days—to respond to the request. 5 U.S.C. §§ 552(a)(4)(A)(viii)(II)(aa), (a)(6)(B)(i). Under agency regulations, if EPA extends the 20 working-day period, it must notify the requester in writing as soon as practicable of the unusual circumstances and of "the date by which processing of the request should be completed," and must also provide the requester with an opportunity to modify or limit the scope of the request so it may

be processed within the 20-day time limit, or arrange an alternative time period for processing the request as permitted by FOIA. *See* 40 C.F.R. § 2.104(f)[2]; 5 U.S.C. § 552(a)(6)(B)(ii).

12. If the federal agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

13. Additionally, an agency's failure to notify a requester of his right to appeal a FOIA denial constitutes constructive exhaustion of the requestor's administrative remedies. *Nurse v. Sec'y of the Air Force*, 231 F. Supp. 2d 323, 328 (D.D.C. 2002).

14. As to actual production, FOIA requires the agency to make records "promptly available," which "depending on the circumstances typically would mean within days or a few weeks of a 'determination', not months or years." *Citizens for Resp. & Ethics in Washington,* 711 F.3d at 188–89.

15. Pursuant to the FOIA Improvement Act's presumption of openness, "an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. United States DOD*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018).

**JURISDICTION AND VENUE**

16. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

17. Venue lies with this district under 28 U.S.C. § 1391(e)(1) and 5 U.S.C. § 552(a)(4)(B) because an agency of the United States is a Defendant, and the State is a resident of every judicial district and division in its sovereign territory, including this judicial district and division. *See Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892) (affirming that state governments "reside[]

---

[2] At the time EPA received the Request from the State, this "unusual circumstances" provision of EPA's regulations fell under 40 C.F.R. § 2.104(e). Effective November 13, 2023, it is now found under 40 C.F.R. § 2.104(f).

at every point within the boundaries of the state"); *see also California v. Azar*, 911 F.3d 558, 569–70 (9th Cir. 2018) ("[A] state with multiple judicial districts 'resides' in every district within its borders.").

18. Because the State's Request relates to another case pending in this Division of this District, *Louisiana v. EPA*, No. 2:23-cv-00692 (W.D. La. filed May 24, 2023), the State is filing this action here and will seek to have this action deemed a related matter.

## FACTUAL BACKGROUND

19. On June 29, 2023, the State submitted a FOIA request ("Request") to EPA requesting records from "March 1, 2021 to the present" except for instances where a different time period was otherwise specified in the Request. *See* Ex. 1 at 1-3.[3] The Request specifically seeks 13 categories of records related to, *inter alia*, environmental justice in Louisiana, the Industrial Corridor in Louisiana, the Journey to Justice tour in Louisiana, various complaints that were previously submitted to EPA, and informal resolution discussions with the Louisiana Department of Health or the Louisiana Department of Environmental Quality. *See id.*

20. The State also requested that if any documents were withheld pursuant to FOIA exemptions that the agency produce an index describing the documents withheld, indicating what exemptions had been claimed, and providing a brief rationale why the claimed exemption(s) is applicable.. The Request also included an application for a waiver or reduction of fees based on the public interest in disclosure of the requested information. *See* Ex. 3.

21. On July 25, 2023, EPA sent the State an "Initial Response Letter" by electronic mail acknowledging that EPA had received the FOIA request on June 29, 2023, Exs. 1, 2, and noting that the Request had been assigned FOIA Request No. EPA-2023-005099.

---

[3] EPA acknowledged receiving the State's FOIA Request in its July 25, 2023 initial response letter, and quoted the operative language of the FOIA request verbatim in that letter. *See* Ex. 1 at 1-3.

22. In the Initial Response Letter, EPA indicated that it had initiated a search for records, but that due to "unusual circumstances," including the need for additional time to search for and collect records from field facilities or other separate offices, the voluminous amount of records, and the need to consult another agency, an extension of time was necessary to respond to the Request. Ex. 1 at 4-5. EPA provided an "estimated date of completion" of July 30, 2024, roughly 13 months after the June 29, 2023 request date. *Id.* at 4.[4] The Initial Response Letter did not provide the State with an opportunity to arrange with EPA an alternative time frame for processing the Request. *See id.*

23. EPA also stated that because the "request is too broad to be completed within 20 days" and "does not reasonably describe the records [that the State is] seeking" and more information was necessary to proceed with the request, it would provide the State with the opportunity to discuss the request and clarify or modify it. *Id.* at 3.[5] If EPA received the State's clarification or modification, it would then provide an updated estimated date of completion. *Id.* at 5. In the meantime, the processing clock would be stopped at 17 working days. *See id.*

24. In a separate July 25, 2023 letter to the State, EPA denied the State's request for a fee waiver because it "did not address with enough detail" regarding one identified factor from EPA's FOIA regulations, and indicated that the State could administratively appeal this fee waiver determination and provided instructions on how to do so. Ex. 3 at 3-4.

---

[4] In the Initial Response Letter, EPA did identify three publicly available websites that "may be responsive to portions" of the Request. *Id.* at 4.

[5] EPA also took issue with the State's "requests phrased as legal discovery" because such requests allegedly "do not provide adequate information to allow a professional employee to determine which records [the State] wish[es] EPA to provide." *Id.* at 3. That objection was strange: To the extent that EPA's objection was that the State's requests were phrased more in terms of the lawyerly precision of discovery requests, rather than the more informal nature of many FOIA requests, that should have *assisted* EPA in responding to the requests. Oddity aside, this comment is perhaps revealing of EPA's true intentions: *i.e.*, an unwillingness to produce any documents that might assist the State in its suit against EPA, FOIA obligations notwithstanding. In any event, FOIA recognizes no "phrased as legal discovery" exception to the obligations that it imposes on agencies.

25. In response, the State sent EPA an August 4, 2023 letter indicating that EPA's July 30, 2024 completion date—more than 13 times longer than FOIA's ordinary 20-business-day deadline—was beyond the pale and that its response was unlawful. Ex. 4 at 1. The State further objected to EPA's stopping the FOIA production clock based on, *inter alia*, EPA's confusing objection that the State's requests were "phrased as legal discovery," and EPA's request to clarify the Request's date range when it plainly indicated that the time frame for the request was "March 1, 2021 to the present" "unless otherwise specified"; because these objections were improper and indefensible, the State insisted that EPA restart the clock for processing the Request. *Id.* at 2, 4.

26. The State also agreed to limit EPA's initial search to certain named custodians while reserving the right to expand the search later on if necessary, *id.* at 2, and to meet with EPA to discuss other search parameters for potentially narrowing the scope of the request. *Id.* at 1. It also provided suggested search terms to assist with EPA's initial search. *Id.* at 3. The State further asked that EPA prioritize production of documents regarding EPA's communications with the press since such records should be readily identifiable. *Id.* at 1-2. Finally, the State pointed out some glaring issues regarding the non-responsiveness of publicly available website links that EPA pointed the State to in response to certain parts of the Request. *Id.* at 3-4.

27. On August 22, 2023, EPA representatives met with counsel for the State by phone to discuss the Request. Ex. 5 at 3.

28. After that discussion, EPA sent the State a letter on August 25, 2023 ("August 25 Letter") proposing certain modifications to the Request, including narrowing the custodians, date ranges, key words, and record types to be searched for various parts of the Request. *Id.* at 3-6. EPA again invoked FOIA's "unusual circumstances" provision to assert that "an extension of time" remained "necessary to respond to [the State's] request." *Id.* at 6. Accordingly, based on the proposed

modifications, EPA provided an "updated estimated date of completion" of December 1, 2023, and that EPA would provide "interim releases as records are available" before that end date. *Id.* at 6-7.

29. In the August 25 Letter, EPA also indicated that "[t]he processing clock" had been "restarted for [the State's] FOIA request effective August 4, 2023." *Id.* at 6.

30. EPA and the State had a follow-up phone call on August 30, 2023 to discuss the modifications and clarify outstanding questions. Ex. 6 at 2. In that call, EPA confirmed that it was still working to determine whether the revised search terms had produced a manageable universe of documents, but that it would inform the State once it had an answer and that it anticipated an iterative process if the terms were creating too many hits. *See id.* It also indicated that records productions would take place on a rolling basis. *Id.*

31. After hearing no update from EPA for over a month, the State sent an October 10, 2023 email to check in regarding whether EPA had any updates on the revised search terms, the universe of documents, and an anticipated production schedule. *Id.* The State indicated that it had not received any documents despite EPA's agreement to produce on a rolling basis. *Id.* He also said that because the State had heard nothing regarding those search terms, it would assume that they were sufficiently narrow to facilitate a timely production by December 1 as indicated in the August 25 letter. *Id.* If a December 1 production was not feasible, the State requested a quick response so it could determine whether it would need to seek relief as appropriate. *Id.*

32. One week later, EPA responded and stated that it had "completed the search and collection steps for [the State's] request" but that it still needed to "complete the responsiveness and privilege review of the records" before production. *Id.* at 1-2. EPA confirmed that December 1, 2023 was the estimated date of "completion" and that it would update the State if that changed. *Id.*

33. More than one month later, on November 22, 2023, EPA sent an email to update the State that because a large volume of potentially responsive documents was identified after completing

8

its searches, EPA would have to release documents "in batches" rather than in a single production as initially estimated, and the first batch could not be released until several days after December 1st due to internal review requirements. *Id.* at 1.

34. At no point did EPA indicate that it had made any determination regarding the scope of the documents it intends to produce from the Request, its reasons for withholding documents (if it intends to withhold any), or inform the State regarding its right to administratively appeal any adverse determination and the time to do so. *See id.*

35. On November 24, 2023, the State responded to EPA's November 22 email and expressed disappointment in EPA's failure to abide by its self-set deadline even though the agency knew what the volume of potentially responsive documents was at least a month previously, yet still confirmed to the State that December 1st remained the estimated date of completion. Ex. 7 at 1. The State also expressed disapproval of EPA's unilateral decision to change its planned final production to merely producing interim "batches" of documents, and further to extend the deadline to December 8 to merely produce an initial "batch" of documents. *Id.*

36. Accordingly, the State rejected EPA's attempt to make this change to a batch-by-batch production, and asked EPA to confirm by COB Monday, November 27 that *all* responsive documents would be produced *no later* than December 8. *Id.* The State also reserved the right to seek appropriate relief if EPA did "anything other than unequivocally agree." *Id.*

37. EPA did not provide that confirmation requested by the State. Instead, on December 8, 2023, EPA sent the State a letter ("December 8 Letter") transmitting its First Interim Release of 106 documents (360 pages in length) that were responsive to Parts 1 and 6 of the Request and partially redacted with the applicable FOIA exemptions indicated on each redaction. EPA indicated without further explanation that it "considered the foreseeable harm standard when reviewing records and applying FOIA exemptions." Ex. 8 at 3.

38. EPA also stated that it was "continu[ing] to work on [the State's] request" and "expects to release the next interim production on December 22, 2023." *Id.* The State never agreed to any alternative time frame for processing the Request beyond the December 8, 2023 date. EPA did not commit to any date to complete production or even provide an estimated date by which it would do so. *See id.*

39. In the December 8 Letter, EPA again did not indicate that it had made a determination regarding which documents it intends to produce or withhold from the Request as a whole, and it did not indicate that the December 8 First Interim Release constituted an adverse determination that the State had the right to administratively appeal. *See id.* Instead, EPA indicated that the Request "is not being closed at this time" and that when the State's request is closed, the State "will receive information concerning [its] appeal rights for any part of EPA's response." *Id.*

40. To date, EPA has not provided its determination in response to the Request as required by FOIA even though more than five months[6] have passed since EPA received the State's request.

41. EPA's failure to produce documents from its relevant communications with third parties is particularly illustrative and troublesome. Officials from EPA revealed that they were communicating with Sierra Club and others in February 2023 regarding the subject matter of the FOIA request.

42. The State expressly sought those communications in its Request numbers 6 and 7, and specifically identified all of the third parties at issue. Those communications could have readily been

---

[6] Even if the Court accepts that EPA's Initial Response Letter successfully tolled its processing clock on July 25, 2023 (the 17th working day after receipt), *see* Ex. 1 at 5, EPA itself acknowledges that the clock restarted on August 4, 2023. *See* Ex. 5 at 6. That would mean that the clock only stopped for a total of 8 working days, and that FOIA's 30-working-day deadline (under unusual circumstances) expired on August 22, 2023. In either event, EPA's deadline for providing its determination to the State has long passed.

identified and segregated quickly if EPA were inclined to do so. In particular, emails from the small number of EPA custodians at issue to particular domain names (e.g., sierraclub.org) could have been gathered with minimal effort. Nor would those emails implicate any applicable privilege, such as deliberate-process or attorney-client privilege.

43. Counsel for the State specifically discussed these communications with EPA FOIA officials and flagged them as documents that could be readily gathered and produced.

44. There simply is no defensible reason that EPA could not have gathered and released these communications by the agency's own estimated completion date of December 1—which was more than *five months* after the State made its requests under FOIA. Nor has EPA offered any explanation of why it has failed to do so to date. EPA's failure to produce these documents is a patent violation of its duties under FOIA warranting judicial intervention.

## CLAIMS FOR RELIEF

## COUNT ONE

**(Failure to Comply with Statutory Deadlines in Violation of FOIA)**

45. The State repeats and incorporates by reference each of the Complaint's allegations stated above.

46. FOIA requires EPA to have provided a "determination" within 20 working days of receiving the State's FOIA request. EPA may extend FOIA's 20-day period in the event of "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), for a maximum of 10 working days by providing written notice to the requester. *See id.* § 552(a)(6)(B)(i).

47. More than 30 working days have passed since the FOIA request identified above was received and logged by EPA on June 29, 2023.

48. Although EPA notified the State on two separate occasions that it was extending the 20-day time limit due to "unusual circumstances," EPA failed to make or communicate a

determination within 30 working days of receiving and logging the FOIA request as required by FOIA. *See id.* § 552(a)(6)(B)(i).

49. Furthermore, when EPA provided the State the opportunity to narrow the scope of its request to limit the number of potentially responsive records to allow EPA to respond more quickly, the State did so and agreed to a set of narrowing search terms. *See* Ex. 6 at 2. Despite this narrowing, EPA still has not timely communicated a determination in response to the State's FOIA request.

50. Even though EPA and the State never arranged an "alternative time frame" for processing the Request beyond December 8, 2023, *cf.* 5 U.S.C. 552 § (a)(6)(B)(ii), EPA unilaterally decided that it could "continue[] to work on [the State's] request" past that date, and indicated that it "expects to release the next *interim* production on December 22, 2023," Ex. 8 at 3 (emphasis added), all without consulting with the State regarding arranging for new interim or final deadlines for processing the Request, in contravention of FOIA's statutory obligations. *See* 5 U.S.C. 552 § (a)(6)(B)(ii).

51. Additionally, to issue a "determination" and trigger the administrative exhaustion requirement, EPA was at least required to: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 188. To date, EPA has failed to determine and communicate the scope of the documents it intends to produce and withhold, whether it will comply or not comply with the State's entire request, its reasons for withholding documents, and to inform the State of its opportunity to administratively appeal such determination.

52. EPA's responses to the State do not constitute an appealable "determination" under FOIA. *See In Def. of Animals v. NIH*, 543 F. Supp. 2d 83, 97 (D.D.C. 2008) (holding that agency's action "did not trigger the exhaustion requirement" because agency failed to notify plaintiff of right to file administrative appeal of that action before plaintiff filed suit).

53. Even if portions of EPA's December 8 First Interim Release did communicate its reasons for redacting certain documents, that production did not qualify as an appealable determination because it did not inform the State of its opportunity to administratively appeal that determination or the time period by which any appeal must be received. To the contrary, EPA expressly indicated in its interim release letter that "information concerning [the State's] appeal rights for any part of EPA's response" would only be forthcoming *at a future date* "when [the State's] request is closed." Ex. 8 at 3.

54. EPA thus also failed to timely notify the State of its right "to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination" in contravention of FOIA's requirement. 5 U.S.C. 552 § (a)(6)(A)(i)(III)(aa); *see also Nurse*, 231 F. Supp. 2d at 328 (D.D.C. 2002) ("If, however, the agency's ... response was considered by the defendant as a denial of the plaintiff's request, its failure to notify the plaintiff at that time of his right to appeal that decision also amounts to constructive exhaustion because the defendant had an obligation to inform the plaintiff of his right to appeal the adverse decision.").

55. EPA's attempt to release piecemeal batch-by-batch productions without making a determination regarding the Request (and without an agreed upon end date), while purporting to insulate those documents' redactions from administrative appeal challenges until all documents are produced, violates EPA's statutory obligations under FOIA.

56. EPA has thus failed to timely make and communicate a determination, in violation of FOIA. See 5 U.S.C. § 552(a)(6).

57. All administrative remedies required by FOIA have been constructively exhausted. See 5 U.S.C. § 552(a)(6)(C)(i).

## COUNT TWO

### (Unlawful Withholding of Agency Records in Violation of FOIA)

58. The State repeats and incorporates by reference each of the Complaint's allegations stated above.

59. FOIA requires EPA to process records requests and "promptly" provide the requested records or the reasonably segregable portion of records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3)(B). "Promptly" typically means "days or weeks" "not months or years." *See Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188-89.

60. After the State agreed on August 4, 2023, to narrow the scope of its initial request, EPA estimated on August 25, 2023, that it would complete its entire review and production of records by December 1, 2023. Instead of completing its review and production by that date, EPA only produced a "first batch" of 106 records on December 8, 2023, without indicating how many subsequent batches will follow or estimating when EPA's records productions will be completed.

61. Even though more than four months have transpired since the State agreed to narrow the scope of its request (and more than three-and-a-half months since EPA sent the August 25 Letter agreeing to complete its production on December 1, 2023), to date EPA has only released 106 responsive records to the State in a first interim production, and has not indicated when it anticipates that the remaining records will be produced beyond its next "interim" production estimated to take place on December 22, 2023.

62. To date, EPA has not claimed that any responsive records are exempt from disclosure beyond the redactions contained in the 106 released records.

63. Therefore, even if EPA has made a "determination" as required by FOIA (which it has not), EPA's failure to promptly produce the remaining records requested by the State, or to claim applicable exemptions beyond those redactions contained in the 106 released records, violates FOIA. *See* 5 U.S.C. § 552(a)(3)(B).

## COUNT THREE

**(Unlawful Redaction of Non-Exempt Information in Violation of FOIA)**

64. The State repeats and incorporates by reference each of the Complaint's allegations stated above.

65. Pursuant to the FOIA Improvement Act's presumption of openness, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law.

66. In the Request, the State properly requested all non-exempt responsive records within EPA's custody and control in unredacted form.

67. The State requested that if the agency decided to withhold any documents (or portions thereof) under FOIA's exemptions the agency produce an index describing the information withheld, indicating what exemptions had been claimed, and providing a brief rationale why the claimed exemption(s) is applicable.

68. Even though EPA has produced a first batch of documents with redactions, it did not provide any such index or brief rationale for why the claimed exemptions were applicable to those redactions. Without this explanation, it is difficult for the State to determine whether the exemptions have been properly applied or not to the redacted information and whether EPA has reasonably

foreseen a specific, identifiable harm that would be caused by disclosure of the redacted materials. *Cf. Judicial Watch, Inc. v. United States DOC*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019).

69. On information and belief, EPA has violated FOIA by improperly redacting non-exempt information in records that is responsive to the Request. EPA has also not provided sufficient reasoning to support its claim of foreseeable harm from the release of this information.

70. EPA has violated its statutory obligation under FOIA to release all non-exempt responsive records to the State. *See* 5 U.S.C. § 552(a)(3)(A).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A. Order EPA to immediately provide a determination on the State's request as required by FOIA, 5 U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(B);

B. Order EPA to immediately conduct a reasonable search for all remaining responsive records and demonstrate that it employed search methods reasonably calculated to uncover all records responsive to the requests as required by FOIA, 5 U.S.C. § 552(a)(3)(C);

C. Order EPA to promptly make available to the State all responsive, non-exempt records, as required by FOIA, 5 U.S.C. § 552(a)(3);

D. Order EPA to produce a *Vaughn* index of any responsive records or redacted information withheld under claim of exemption, *see Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145–146 (D.C. Cir. 2006);

E. Maintain jurisdiction over this action to ensure that EPA promptly produces all non-exempt responsive records to the State and that any non-exempt portions of responsive records are not improperly withheld;

F. Award reasonable attorneys' fees and allowable costs, including under 5 U.S.C. § 552(a)(4)(E); and

G. Grant Plaintiff such other and further relief to which it is justly entitled at law and in equity.

Dated: December 19, 2023

Respectfully submitted,

By: */s/ Elizabeth B. Murrill*

DREW C. ENSIGN *
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
2575 East Camelback Rd., Suite 860
Phoenix, AZ 85016
(602) 388-1262
densign@holtzmanvogel.com

ELIZABETH B. MURRILL (La #20685)
  Solicitor General
JOSEPH SCOTT ST. JOHN (La #36682)
  Deputy Solicitor General
TRACY SHORT (La #23940)
  Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

*Pro Hac Vice admission application forthcoming*