# EXHIBIT 4



Jeff Landry
Attorney General

**State of Louisiana**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE
70804-9005

August 4, 2023

VIA EMAIL

Denise Dykeman
Jonathan Stein
Dykeman.Denise@epa.gov
Stein.Jonathan@epa.gov

Re:   FOIA Request No. EPA-2023-005099

Ms. Dykeman and Mr. Stein:

    I represent the State of Louisiana (the "State"), and on its behalf submit this letter in response to your letter sent by electronic mail on July 25, 2023, regarding the State's FOIA request (EPA-2023-005099). As explained below, your response is unacceptable and unlawful, and the reasoning supplied therein is untenable. In particular, your proposed completion date of July 30, 2024—roughly 13 months after the June 29, 2023 request date and *over 13 times* the ordinary 20-business-day deadline of 5 U.S.C. § 552(a)(6)(A)(i)—is beyond the pale.

    While we are willing to discuss with you "search parameters … including the custodians, potential key words, and the date range(s) for each portion of [the State's] request," as you propose in your response (at 3), your proposed July 30, 2024 completion date is so unreasonable as to be a non-starter. Please let us know times that you are available to talk next week (August 7-11).

    Before any such discussions next week, however, a few preliminary responses are in order.

    ***Contacts with the Press***. It has become apparent to the State from highly specific press inquiries that EPA has been prodigiously leaking information to the press, including the details of non-public negotiations. Your response does not deny that such contacts with the press have occurred, and any such denials would be, quite frankly, incredible. And the remarkable rapidity with which the press has obtained information from EPA belies the agency's instant contentions that production of such information would take 13 months (or even 13 days).

    It thus beggars belief that it would take EPA until the end of July 2024 to search for and produce the records of its contacts with the press. A few frank

conversations with EPA's press shop, the individuals involved in the investigation of the relevant complaints (Complaint Nos. 01R-22-R6, 02R-22-R6, and 04R-22-R6), and the resulting informal resolution discussions could easily identify the individuals at issue and facilitate production of relevant documents with a week if EPA were so inclined. You obviously aren't. And that lack of inclination is particularly apparent since the State has made such a search remarkably easy: we specifically identified the relevant organization and members of the press in Request No. 1, which could readily be used as search terms.

The State therefore expects EPA to have the necessary conversations with its officials and employees about its relevant press contacts and produce the responsive documents within 20 business days of this letter (September 1, 2023). If you refuse to do so, we ask that take the necessary steps by that date to facilitate the State appealing your refusal to produce the relevant documents in the time requested, so that the State can expeditiously file its administrative appeal and, if necessary, initiate litigation in federal district court.

***Date Ranges.*** Although your letter asks the State to discuss *inter alia* "date range(s) for each portion of your request," the State's request already did so. Specifically, the State's request (at 2) explicitly provided: "Unless otherwise specified, the time frame for this request is **March 1, 2021 to the present**."

Your response appears to have overlooked that the State has already provided a highly specific date range. If you have concerns or questions about that date range, please let us know. (If, for example, the meaning of "March 1, 2021" or "the present" is somehow unclear to EPA, we can discuss as necessary.) But we do not understand why EPA can lawfully stop the FOIA production clock to ask for clarification of the State's date range when that date range could not have been clearer. In addition, EPA's apparent failure to account for the State's explicit date range does not inspire confidence as to the agency's attention to detail in responding to the State's request.

***Custodians.*** You may limit your initial search to (1) all EPA officials that were involved with investigation of the complaints at issue, as well as all EPA officials that had contact with the press or complainants, including: Lilian Dorka, James Payne, Melissa Hoffer, Mary O'Lone, Ronald Scott, Daniel Isales, Zahra Khan, Anhthu Hoang, Julia Rhodes, James McGuire, Marcia Moncrieffe, David McCay, Suzanne Andrews, Lynde Schoellkopf, and any other individuals that EPA reasonably believes were involved with investigation of the Complaints, and (2) individuals in the Office of the Administrator involved with scheduling and/or communications regarding the Journey to Justice Tour, and (3) EPA officials involved with Grant Nos. 01F70501 and 01F70601. As to the latter two requests, EPA should be in a position to determine what custodians would have the relevant information. (EPA, for example, presumably knows who schedules and keeps

Administrator Regan's calendar, and the State should not be required to ascertain those individuals when their identity should be obvious to the agency.)

***Key Words.*** The State believes that its request provided obvious key words/search terms for the request. To streamline the process, however, the State suggests the following search terms for EPA's initial search: "Denka," "Formosa," "Louisiana," "LDEQ," "LDH," "Louisiana Department," "Cancer Alley," "Journey to Justice," "01R-22-R6," "02R-22-R6," "04R-22-R6," "Title VI," "environmental justice," and "disparate impact," as well as all individuals and organizations included in bullet points for Requests No. 1 and 6.

***Subsequent Searches.*** Although the State is providing suggestions for custodians and key words for an initial search, the State reserves the right to demand an expanded search based on the documents provided by EPA's initial search using these custodians/key words.

***Administrator Regan's Calendar***. For Administrator Regan's calendar, your response (at 4) told the State: "please see … the senior leaders calendar page" and provided a link to https://www.epa.gov/senior-leaders-calendars.

There are two glaring issues with this response. *First*, Administrator Regan's calendar for November 2021, when the Journey to Justice Tour was in Louisiana, appears to be entirely blank. *See id.* Please see attached a copy of the Administrator's calendar for November 2021 as reproduced from the website link that you provided, which lacks a single appointment. For the whole month. Similarly lacking is even a single appointment *every other month in 2021*. Indeed, the calendar on the website does not appear to have *any* entries whatsoever until August 4, 2022. *Id.*

Respectfully, did you check this link before providing it to the State? Directing the State's attention to a link that is devoid of responsive information betrays a lack of diligence towards the State's request that is difficult to miss. The State was able to ascertain the complete absence of useful information from that link in under two minutes, which fairly begs the question of whether EPA checked that link itself before providing that response to the State. And whether that response was the product of mere negligence or something more intentional, it is plainly insufficient.

*Second*, while lacking any calendar entries for the relevant dates, the website link provided does supply a glaring caveat: "The simplified calendar does not constitute the official record-copy of the calendar for the purpose of documenting the activities of Senior Leaders. **If you are seeking the official record-copy of the Administrator's calendar, please submit a FOIA request.**" https://www.epa.gov/senior-leaders-calendars/calendar-michael-s-regan-epa-administrator (emphasis added) (last visited August 3, 2023).

3

The State has done just that: requesting an "official record-copy of the Administrator's calendar" by FOIA request. Directing the State back to a website that is expressly less complete/official than what can be sought by a FOIA request *is not responsive to the State's FOIA request*. Instead, EPA's response constitutes a *de facto* Catch-22—*i.e.*, EPA's response to a FOIA request is to provide a link to a website telling the State to file a FOIA request (which it already did). That is positively Kafkaesque in nature, rather than a legally defensible response to the State's FOIA request.

***"Phrased as Legal Discovery."*** EPA's response includes a strange objection (at 3) that the State's requests are "phrased as legal discovery." It is difficult to understand EPA's position here.

To the extent that EPA's objection is that the State's requests are phrased more in terms of the lawyerly precision of discovery requests, rather than the more informal nature of many FOIA requests, that should *assist* EPA in responding to the requests. Your response does not otherwise indicate how using the more-precise legal language of discovery requests would hinder, rather than facilitate, EPA's ability to respond to the State's request.

Your response appears to intimate a different, more-problematic objection: that the documents sought are relevant to a pending lawsuit, *Louisiana v. EPA*, No. 2:23-cv-00692 (W.D. La.). But FOIA does not exempt documents from production that might be relevant to pending suits, just as it does not exempt documents that might be embarrassing or legally detrimental to the agency.

The upshot is this: your "phrased as legal discovery" objection is both (1) not a relevant consideration/defense and (2) highly suggestive that EPA is slow-walking its response to the State on improper bases, including to gain tactical advantages in a pending lawsuit.

If you believe that your "phrased as legal discovery" objection has any actual legal significance, we invite you to clarify the matter and provide supporting citations of legal authority. Absent any such additional information with supporting citations from EPA, the State regards this objection as improper and indefensible. Further, the State will litigate the matter fully as necessary, both by administrative appeal and in federal courts as needed.

*   *   *

As I indicated earlier, I look forward to discussing these matters with EPA. We have provided this initial information to facilitate those discussions. Please let us know your availability for discussions for the week of August 7-11. In the meantime, the State respectfully insists that EPA restart the clock for processing of the State's FOIA request (stopped by EPA on July 25). The State further objects to

any future "stop clocks" and expects EPA to resume processing the State's FOIA request expeditiously.

          Sincerely,

          Joseph Scott St. John
          Deputy Solicitor General
          *Counsel for the State of Louisiana*